# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **WILLIAM DONOHUE,**<br>    **Plaintiff** | **CIVIL ACTION** |
| **VERSUS** | **No. 11-1982** |
| **JAMES POHLMAN, et al.,**<br>    **Defendants** | **SECTION "E"** |

### ORDER AND REASONS

Before the Court is the Motion for Summary Judgment filed by Defendants, Jack Stephens (the "Sheriff"), in his official capacity as Sheriff of St. Bernard Parish, Louisiana,[1] and Deputy Brad Alfonso ("Alfonso") (together, "Defendants").[2] Plaintiff, William Donohue ("Plaintiff"), opposes Defendants' motion.[3] Defendants raise several arguments in their motion, including the argument that they are entitled to qualified immunity. This order addresses only Defendants' contention that they are entitled to qualified immunity. Defendants' remaining arguments will be addressed by separate order. For the following reasons, the Court finds that Alfonso is entitled to qualified immunity and **GRANTS** the motion as to Alfonso. The Court further finds that the Sheriff is not entitled to qualified

---

[1] At the time of the events in question in August of 2010, Stephens was the duly elected Sheriff of St. Bernard Parish. Plaintiff's complaint and first amended complaint assert claims against Stephens in his official capacity. Stephens completed his term of office on June 30, 2012, and James Pohlmann ("Pohlmann") has replaced him. Pohlmann, in his official capacity, has been substituted for Stephens as a party to this litigation. All documents filed in the record refer to Stephens. As a result, for the sake of clarity, the Court refers to the office of the Sheriff of St. Bernard Parish as the "Sheriff." *See* Fed. R. Civ. P. 25(d); *Chisom v. Jindal*, ___F.Supp.2d ___, 2012 WL 3891594 (E.D. La. Sept. 1, 2012) (Morgan, J.); *see also* R. Doc. 49 at p. 1 n.1.

[2] R. Doc. 45.

[3] R. Doc. 49.

immunity and **DENIES** the motion as to the Sheriff.

## *Background*

On Saturday, August 14, 2010, Plaintiff was incarcerated as a federal detainee at the St. Bernard Parish Jail (the "Jail"), a facility operated and controlled by the St. Bernard Parish Sheriff's Office.[4] The Jail has two windowless isolation cells and three main wings: A Wing, B Wing and C Wing.[5] A Wing and C Wing are identical. Each wing has a central control booth ("A Wing Control Booth" and "C Wing Control Booth") and four tiers – two of which are large tiers designed to house 32 inmates and two of which are small tiers designed to house 14 inmates. One deputy staffs the A Wing Control Booth and one deputy staffs the C Wing Control Booth. The C Wing Control Booth is elevated several feet and has windows on all sides. The C Wing Control Booth deputy is responsible for monitoring the activities of the inmates in the four surrounding tiers.[6] In order to view all of the tiers, a deputy must "spin around."[7] Closed-circuit surveillance cameras record the ongoing activities in the A Wing and C Wing tiers, but television monitors displaying video feeds from these cameras are not located in the A Wing Control Booth or C Wing Control Booth.[8] Rather, these monitors are located in B Wing's control booth, which is designated as the

---

[4] Plaintiff was in federal custody at the Jail because he was awaiting sentencing in *United States v. William Donohue, Jr.*, Criminal Action No. 08-231 (E.D. La.). On June 4, 2010, Plaintiff pled guilty to one count of maintaining a place for the purpose of manufacturing, distributing or using a controlled substance in violation of 21 U.S.C. § 856(a)(1). His sentencing hearing was scheduled for September 16, 2010. *See* Criminal Action No. 08-231, R. Docs. 676 and 809.

[5] R. Doc. 49-5 at pp. 20-21.

[6] R. Doc. 49-5 at pp. 21 and 27.

[7] R. Doc. 49-3 at p. 15.

[8] R. Doc. 49-5 at p. 32.

main control booth ("Main Control").[9] Each tier in A Wing and C Wing has a buzzer system (the "Simplex system") which allows inmates to communicate with the deputy stationed in A Wing Control Booth or C Wing Control Booth, respectively. The Simplex system also allows the control booth deputy to speak back to the inmates.[10]

B Wing comprises a 16-person disciplinary tier, which houses inmates in cells, and four dormitory-style tiers.[11] One deputy in Main Control monitors the inmates in B Wing.[12] The Main Control deputy also must monitor the screens displaying the surveillance feeds from A Wing and C Wing, and operate the doors throughout the Jail.[13]

On Saturday, August 14, 2010, Plaintiff was housed in tier C-4 — one of the small tiers devoted to federal detainees — located in the C Wing.[14] C-4 consists of seven 2-man cells which open onto a common area containing two picnic-style tables.[15] From 7:00 p.m. to 7:00 a.m, inmates are locked in their cells.[16] Outside of those hours, inmates in C-4 may use the common area.[17] Alfonso, who at all times was acting under color of state law and

---

[9] The deputy in the Main Control is responsible for watching between five and ten monitors. It is not clear from the record exactly how many monitors are located in Main Control. Some monitors show video feeds from rotating cameras and some show feeds from fixed cameras. All tier cameras are fixed. R. Doc. 49-5 at pp. 31-33.

[10] R. Doc. 49-3 at p. 41.

[11] R. Doc. 49-5 at p. 22.

[12] R. Doc. 49-5 at p. 27.

[13] R. Doc. 49-5 at pp. 33 and 34-35.

[14] R. Doc. 58 at p. 11.

[15] R. Doc. 49-5 at p. 23.

[16] R. Doc. 49-5 at p. 26.

[17] R. Doc. 49-5 at p. 26.

within the course and scope of his employment, was on duty in the C Wing Control Booth on the afternoon of August 14.[18]  Jail policy required Alfonso to conduct thorough visual security checks every fifteen minutes.[19]  To conduct a visual security check, Alfonso "would actually take a walk around the booth, look through the glass into each tier and inspect any aspect of the inmates['] . . . living abilities [sic] to make sure everything is the way it is supposed to be."[20]  Alfonso conducted security checks at 4:46 p.m., 5:00 p.m., 5:14 p.m., and 5:29 p.m on August 14.[21]  During that period, another deputy was in tier C-3 cutting inmates' hair.[22]  At approximately 5:19 p.m., between Alfonso's 5:14 p.m. and 5:29 p.m. security checks, another inmate, Kendall Wilson, approached Plaintiff in the C-4 common area and demanded Plaintiff's opinion regarding the controversial proposal to build a mosque in New York City, New York, near the site of the September 11, 2001 terrorist attack.[23]  Plaintiff stated he believed the mosque was a bad idea.[24]  In response, Kendall Wilson spat on him.[25]  Plaintiff, upset at being spat upon, approached Kendall Wilson, who

---

[18] R. Doc. 49-3 at p. 29.

[19] R. Doc. 49-3 at p. 29.

[20] R. Doc. 49-3 at p. 28.

[21] R. Doc. 49-3 at p. 32.

[22] Deputy Soulagnet ("Soulagnet") was in tier C-3 from 4:31 p.m. to 5:34 p.m. giving haircuts to approximately four to six inmates.  R. Docs. 45-2 at p. 2 and 49-3 at pp. 30-31.  Alfonso testified at his deposition that his "main focus" was on Soulagnet during this period because this task exposed Soulagnet to security risks.  R. Doc. 49-3 at p. 32.  Inmates receive haircuts only on weekend days.  R. Doc. 49-3 at p. 31.

[23] R. Doc. 49-8 at p. 26.  Plaintiff has provided the Court with a DVD containing nineteen minutes (from 5:19 p.m. to 5:37 p.m.) of C-4 video surveillance footage as a manual attachment to his opposition memorandum.  *See* R. Doc. 49-9.  This video has been filed into the record at R. Doc. 50.  The Court has reviewed the video.

[24] R. Doc. 49-8 at p. 28.

[25] R. Doc. 49-8 at p. 28.

then "sucker punched" Plaintiff.[26] Thereafter, Ricky Wilson, a relative of Kendall Wilson, joined in the altercation.[27] The Wilsons beat Plaintiff for approximately twenty seconds.[28] At some point Plaintiff lost consciousness.[29] Plaintiff suffered facial trauma, facial lacerations (right eyebrow and lip), a nasal fracture, two broken teeth, and a left distal fibular fracture.[30]

Plaintiff regained consciousness at 5:22 p.m.[31] He attempted to contact Alfonso in the C Wing Control Booth by banging on the tier's glass windows and using the Simplex system.[32] However, the Simplex system was not functioning properly.[33] Alfonso testified at his deposition that he did not hear or see Plaintiff attempting to contact him.[34] Alfonso also testified that, as part of his official duties, he was not responsible for verifying that the Simplex system was operating properly before he started his shift and, as a result, he was not aware that it was malfunctioning on the date Plaintiff was attacked.[35] Plaintiff retreated

---

[26] R. Docs. 49-8 at p. 28 and 49 at p. 4.

[27] R. Doc. 49-8 at p. 29.

[28] R. Doc. 50 at 5:19:12 p.m to 5:19:32 p.m.

[29] R. Doc. 49-8 at p. 29.

[30] R. Doc. 49-2 at p. 2.

[31] R. Doc. 50 at 5:22 p.m.

[32] R. Doc. 49-8 at p. 32; R. Doc. 50 at 5:22:23 p.m.

[33] R. Doc. 49-3 at p. 24.

[34] R. Doc. 49-3 at pp. 24 and 34.

[35] R. Doc. 49-3 at p. 32.   Plaintiff has not come forward with evidence indicating that other officers on duty on August 14, 2010, actually knew that the C Wing Simplex system was malfunctioning. Furthermore, there is no evidence that an individual deputy or deputies were responsible for checking the Simplex system to ensure that it was functioning properly.

from the C-4 common room to his cell at 5:23 p.m.[36]  Consequently, when Alfonso conducted his 5:29 p.m. security check, Donohue was no longer in the C-4 common room where Alfonso could easily see him.[37]  No evidence in the record indicates whether the deputy in Main Control saw the fight on the video monitors.

Corporal Brandon Lewis ("Lewis") entered Plaintiff's tier to conduct a "feed up" (i.e., to feed the inmates) at 5:57 p.m.[38]  Lewis observed Plaintiff's injuries and immediately contacted Alfonso to notify him of Plaintiff's condition.[39]  Alfonso then contacted the booking desk and his sergeant to inform them that Plaintiff needed medical assistance.[40]  Plaintiff was removed from C Wing at 6:02 p.m. and provided first-aid.[41]  An Acadian EMS unit arrived at the Jail to evaluate Plaintiff, render medical treatment, and transfer Plaintiff to Interim LSU Public Hospital.[42]  Hospital staff and Jail staff provided medical care to Plaintiff over the next several months.[43]

---

[36] R. Doc. 50 at 5:23:13 p.m.

[37] R. Doc. 50 at 5:29 p.m.

[38] R. Doc.  45-2 at p. 2.

[39] R. Doc. 49-3 at p. 34 and 49-4 at p. 22.

[40] R. Doc. 49-3 at pp. 34-35.

[41] R. Doc. 49-3 at p. 35.

[42] R. Doc. 58 at p. 12.

[43] *See* Defendants' statement of uncontested material facts, R. Doc. 45-3 at pp. 3-4, ¶¶ 14-23. Plaintiff has asserted an Eighth Amendment claim against the Sheriff for failure to provide Plaintiff with adequate medical treatment.  In his opposition memorandum, Plaintiff submits that he does not claim the medical care he received at Interim LSU Public Hospital or from Jail medical personnel was constitutionally inadequate.  Consequently, Plaintiff does not challenge Defendants' recitation of the facts regarding the type and frequency of treatment (e.g., stitches for his facial lacerations, a cast for his broken leg, etc.) from these health care professionals.  Rather, Plaintiff complains that "Sheriff's Office policies . . . placed him in punitive segregation and denied him access to the necessary supportive materials [i.e., crutches, etc.] prescribed by his treating physicians."  R. Doc. 49.  In essence, Plaintiff claims that Jail policies prevented him with complying with his treatment instructions.

Thereafter, Plaintiff initiated this lawsuit pursuant to 42 U.S.C. § 1983 seeking relief for the alleged constitutional violations that occurred during his incarceration at the Jail. First, Plaintiff alleges that the Sheriff, in his official capacity as the policymaker and final decision-maker for the Jail, operated the Jail with a policy, practice or custom of deliberately understaffing Plaintiff's tier on weekend days, thereby failing to provide adequate manpower to prevent and to respond to inmate-on-inmate violence, in violation of the Eighth and Fourteenth Amendments to the U.S. Constitution. Plaintiff also asserts a failure to protect claim and failure to respond claim against Alfonso in his individual capacity. Second, Plaintiff alleges that the Sheriff in his official capacity, pursuant to policy, practice or custom, failed to provide adequate medical attention to Plaintiff in violation of the Eighth and Fourteenth Amendments to the U.S. Constitution. Third, Plaintiff alleges that Defendants' actions constitute negligence pursuant to Article 2315 of the Louisiana Civil Code. Fourth, Plaintiff alleges that the Sheriff is liable for Plaintiff's claims under the theory of *respondeat superior* of Louisiana law.

Defendants have moved for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure, arguing that the actions described in the recitation of the material facts of this case, even when viewed in the light most favorable to the Plaintiff, do not rise to the level of constitutional torts such that he is entitled to relief under 42 U.S.C. § 1983. In addition, Defendants have moved for summary judgment that they are entitled to qualified immunity. Finally, because they argue that Plaintiff cannot succeed on his federal causes of action, Defendants urge the Court to decline to exercise supplemental jurisdiction over Plaintiff's state law claims. Defendants do not address the merits of Plaintiff's state law claims.

## Summary Judgment Standard

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56 ; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.' " *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263-64 (5th Cir. 1991). If the moving party fails to carry this burden, the motion must be denied. If the moving party successfully carries this burden, the burden then shifts to the non-moving party to show that a genuine issue of material fact exists. *Id.* at 322-23. Once the burden has shifted, the non-moving party must direct the Court's attention to something in the pleadings or other evidence in the record that sets forth specific facts sufficient to establish that a genuine issue of material fact does indeed exist. *Id.* at 324. The non-moving party cannot simply rely on allegations or blanket denials of the moving party's pleadings as a means of establishing a genuine issue of material fact, but instead must identify specific facts that establish a genuine issue for trial. *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001). If the dispositive issue is one on which the non-moving party will bear the burden of proof at trial, however, the moving party may satisfy its burden by simply pointing out that the evidence in the record is insufficient with respect to an essential element of the non-moving party's claim. *See Celotex*, 477 U.S. at 325. The nonmoving party must then respond, either by "calling

the Court's attention to supporting evidence already in the record that was overlooked or ignored by the moving party" or by coming forward with additional evidence. *Celotex*, 477 U.S. at 332-33 & 333 n.3.

"An issue is material if its resolution could affect the outcome of the action." *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005). When assessing whether a material factual dispute exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008); *see also Reeves v. Sanderson Plumbing, Inc.*, 530 U.S. 133, 150-51 (2000). All reasonable inferences are drawn in favor of the non-moving party. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). There is no genuine issue of material fact if, even viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party, thus entitling the moving party to judgment as a matter of law. *Smith v. Amedisys*, 298 F.3d 434, 440 (5th Cir. 2002).

### *Law and Analysis*

### I. Section 1983 Generally

Title 42, United States Code, Section 1983 ("Section 1983"), provides, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Thus, to prevail on a Section 1983 claim, a plaintiff must show: (1) that the person engaged in the conduct complained of was acting under color of state law; and (2) that the alleged conduct deprived plaintiff of rights, privileges or immunities guaranteed under the U.S. Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908 (1981), *overruled on other grounds by*, *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662 (1986). The parties do not dispute that the Sheriff in his official capacity and Alfonso in his individual capacity are "persons" for the purposes of Section 1983, and that on August 14, 2010, they were acting under color of state law. As a result, in this order, the Court's remaining analysis solely focuses on whether Defendants are entitled to qualified immunity for their conduct that allegedly deprived Plaintiff of his rights under the U.S. Constitution or the laws of the United States. The Eighth Amendment of the U.S. Constitution, incorporated against the states via the Due Process Clause of the Fourteenth Amendment, protects persons from cruel and unusual punishment. *State of Louisiana ex rel. Francis v. Resweber*, 329 U.S. 459, 463, 67 S.Ct. 374 (1947). Plaintiff first alleges that Defendants' conduct violated Plaintiff's right to be free from cruel and unusual punishment because they failed to protect him from violence at the hands of other inmates (the "failure to protect" claim) and failed to respond quickly enough to the assault (the "failure to respond" claim). Second, Plaintiff asserts that the Sheriff's conduct violated Plaintiff's right to be free from cruel and unusual punishment because Jail staff failed to provide adequate medical care to treat his injuries following the altercation with the Wilsons (the "failure to provide adequate medical care" claim).

## II. Qualified Immunity

### A. Alfonso

Plaintiff has sued Alfonso in his individual capacity.[44]   To establish a failure to protect claim and failure to respond claim under Section 1983  against an individual, Plaintiff must show that (1) "he was incarcerated under conditions posing a substantial risk of serious harm" and (2) "that prison officials were deliberately indifferent to his need for protection."  *Neals v. Norwood*, 59 F.3d 530, 533 (5th Cir. 1995) (citations and internal quotation marks omitted).  An official acts with deliberate indifference if he is aware of an excessive risk to inmate safety and disregards that risk.  *Longoria v. Texas*, 473 F.3d 586, 592 (5th Cir. 2006).  An officer's awareness of the risk is evaluated subjectively.  *Longoria*, 473 F.3d at 592-93.  "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, *and he must also draw the inference*."  *Neals*, 59 F.3d at 533 (citations and internal quotation marks omitted) (emphasis added). "An official's actions must be judged in light of the circumstances that confronted him, without the benefit of hindsight."  *Brown v. Callahan*, 623 F.3d 249, 253 (citing *Graham v. Connor*, 490 U.S. 386, 396-97, 109 S.Ct. 1865 (1989)).

Alfonso has moved for summary judgment that he is entitled to qualified immunity.[45] Qualified immunity protects government officials in their individual capacities from civil

---

[44] A plaintiff "suing governmental officials in their individual capacities . . . must allege specific conduct" by the officials "giving rise to a constitutional violation." *Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002) (internal citations omitted). "Personal involvement is an essential element of" a lawsuit against an official in his individual capacity. *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983).  A plaintiff may not rest on conclusory assertions of personal action, but instead "must allege specific facts giving rise to the constitutional claims." *Oliver*, 276 F.3d at 741.

[45] R. Doc. 45 at p. 9.

damages liability "when their actions could reasonably have been believed to be legal." *Morgan v. Swanson*, 659 F.3d 359, 386 (5th Cir. 2011) (en banc); *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806 (1985) ("The entitlement is an *immunity from suit* rather than a mere defense to liability.") (emphasis in original). As the U.S. Supreme Court has explained, "qualified immunity seeks to ensure that defendants reasonably can anticipate when their conduct may give rise to liability." *United States v. Lanier*, 520 U.S. 259, 570, 117 S.Ct. 1219 (1997) (internal quotation marks and citation omitted). "[I]t provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092 (1986). In essence, qualified immunity "avoid[s] excessive disruption of government" by permitting officials to exercise their vested discretion without fear of civil liability. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727 (1982).

Although qualified immunity is classified as an affirmative offense, once a defendant has properly invoked the doctrine, the burden shifts to the plaintiff to negate the defense. *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009); *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008). Consequently, "[t]he defendant official must initially plead his good faith and establish that he was acting within the scope of his discretionary authority. Once the defendant has done so, the burden shifts to the plaintiff to rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law." *Brumfield*, 551 F.3d at 326 (quoting *Bazan ex rel. Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001)). Because Alfonso has properly raised the issue that he is entitled to qualified immunity, the burden has shifted to Plaintiff to show why Alfonso is not immune from suit. *Brumfield*, 551 F.3d at 326.

"Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right." *Pearson v. Callahan*, 555 U.S. 223, 232, 129 S.Ct. 808 (2009) (citing *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034 (1987). The U.S. Supreme Court has " 'repeatedly told courts . . . not to define clearly established law at a high level of generality.' " *Morgan*, 659 F.3d at 372 (quoting *Ashcroft v. al-Kidd*, ___ U.S. ___, 131 S.Ct. 2074, 2084 (2011)). At the same time, "this does not mean that 'a case directly on point' is required." *Morgan*, 659 F.3d at 372 (quoting *al-Kidd*, 131 S.Ct. at 2083). Rather, "clearly established" means that the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Thompson v. Upshur Cnty., Texas*, 245 F.3d 447, 457 (5th 2001) (quoting *Anderson*, 107 S.Ct. at 3039).

The Fifth Circuit has further clarified that a court must conduct a two-step analysis to assess whether a defendant is entitled to qualified immunity.[46] First, a plaintiff must allege that the defendant violated his clearly established constitutional rights. *Collins v. Ainsworth*, 382 F.3d 529, 537 (5th Cir. 2004) (citing *Hope v. Pelzer*, 536 U.S. 730, 740, 122 S.Ct. 2508 (2002)); *see also Brown v. Bolin*, 2012 WL 6194359, at *3 (5th Cir. Dec. 12, 2012); *Hinojosa v. Johnson*, 277 Fed. App'x 370, 374 (5th Cir. 2008). Second, if the plaintiff has shown such a violation, the court "must consider whether [the defendant's]

---

[46] U.S. Supreme Court jurisprudence traditionally separates the qualified immunity inquiry into a two-pronged analysis considering: (1) whether Plaintiff suffered a constitutional violation, and (2) whether "the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson*, 555 U.S. at 232. As recent legal scholarship has underscored, "the Fifth Circuit has a two-step analysis that essentially collapses the Supreme Court's process, including the clearly established-law requirement, into the assessment of whether a constitutional violation occurred. The Fifth Circuit's approach has also introduced the objective-reasonableness inquiry, whereby courts consider whether a public official's conduct was 'objectively reasonable,' even if the law was clearly established at the time." *See* Amelia A. Friedman, Note, *Qualified Immunity in the Fifth Circuit: Identifying the "Obvious" Hole in Clearly Established Law*, 90 Tex. L. R. 1283, 1295 (2012).

13

actions were objectively reasonable under the circumstances." *Collins*, 382 F.3d at 537 (citing *Bazan*, 246 F.3d at 490); *Brown*, 2012 WL 6194359, at *3; *Hinojosa*, 277 Fed. App'x at 374. "That is, [the] [c]ourt must decide whether reasonably competent officers would have known that their actions violated law which was clearly established at the time of the disputed action." *Collins*, 382 F.3d at 537 (citing *Bazan*, 246 F.3d at 490). According to the Fifth Circuit,

> [a] defendant's acts are held to be objectively reasonable unless all reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the United States Constitution or the federal statute as alleged by the plaintiff. *Id.* at 3040*; Malley v. Briggs*, 475 U.S. 335, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986); *Pierce*, 117 F.3d at 871. The "defendant's circumstances" includes facts known to the defendant. However, because qualified immunity turns only upon the objective reasonableness of the defendant's acts, a particular defendant's subjective state of mind has no bearing on whether that defendant is entitled to qualified immunity. *Anderson*, 107 S.Ct. at 3040; *Pierce*, 117 F.3d at 871 n.5. An official is eligible for qualified immunity even if the official violated another's constitutional rights. *Goodson v. City of Corpus Christi*, 202 F.3d 730, 736 (5th Cir.2000); *Pierce*, 117 F.3d at 872.

*Thompson*, 245 F.3d at 457. "Whether an official's conduct was objectively reasonable is a question of law for the court, not a matter of fact for the jury." *Brown*, 623 F.3d at 253 (citing *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999)).

As to the first prong of the qualified immunity analysis, Plaintiff argues that he has set forth facts indicating that Alfonso's actions "violated clearly established rights of which a reasonable person would have known"[47] because Fifth Circuit caselaw underscores that inmates have an Eighth Amendment constitutional right to be protected from violence at

---

[47] R. Doc. 49 at p. 10.

the hands of other inmates. *See Longoria v. Texas*, 473 F.3d 586, 592 (5th Cir. 2006). The Court agrees that inmates have a constitutional right to be protected from such violence. *Longoria*, 473 F.3d at 592. Nevertheless, Plaintiff's argument "define[s] clearly established law at a high level of generality" in contravention of the U.S. Supreme Court's instructions. *Morgan*, 659 F.3d at 372. The Court must avoid such generalizations and, rather, conduct a more "particularized" review. *Brosseau v. Haugen*, 543 U.S. 194, 200, 125 S.Ct. 596 (2004).

Plaintiff submits he has come forward with evidence that (1) federal detainees are not segregated based on the severity of crimes with which they are charged;[48] (2) Alfonso was focused on Deputy Soulagnet's safety because he was performing inmate haircuts, which impeded Alfonso's ability to closely monitor other tiers in the C Wing;[49] (3) three deputies are frequently in the federal tiers during the week dealing with federal detainees, but these deputies do not work on weekends;[50] (4) haircuts are given only on weekends, when fewer deputies are working with federal detainees;[51] (5) Alfonso was the only deputy on duty specifically in C Wing;[52] (6) C-4's Simplex system was not working and deputies did not regularly test this system despite being on notice that it frequently malfunctioned;[53] and (7) C Wing's Control Booth does not contain monitors displaying video surveillance feeds,

---

[48] R. Doc. 49-6 at pp. 16-17.

[49] R. Doc. 49-3 at pp. 31-32.

[50] R. Doc. 49-3 at pp. 17-18

[51] R. Doc. 49-3 at p. 31.

[52] R. Doc. 49-3 at p. 18.

[53] R. Docs. 45-2 at p. 3 and 49-3 at p. 32.

and the deputy charged with monitoring the video feeds in B Wing's Main Control had many additional duties to perform, which made monitoring the video feeds difficult.[54] Thus, defined more specifically, Plaintiff's theory of the case is that the "cumulative" effect of several Jail policies established the dangerous conditions that made inmate-on-inmate violence more likely, and prevented deputies from responding to that threat of violence, in violation of the Eighth Amendment's prohibition against cruel and unusual punishment.[55] Inmates do have a clearly established Eighth Amendment right to be housed in a properly staffed and monitored corrections facility. *See Hinojosa*, 277 Fed. App'x at 378 & 378 n.10-11; *see also Farmer v. Brennan*, 511 U.S. 825, 843-44, 114 S.Ct. 1970 (1994); *Longoria*, 473 F.3d at 592.

In the Fifth Circuit, it is not necessary for the Court to decide whether Plaintiff had a clearly established constitutional right that Alfonso violated. *Morgan*, 659 F.3d at 371 & 386 (5th Cir. 2011) (citing *Pearson,* 129 S.Ct. at 817-18) (stating that courts have discretion which prong of the analysis to address first and may determine that step one is "optional when immunity is required at step two"). The Court may first address the second prong of the qualified immunity analysis – *i.e.*, whether Alfonso's actions on August 14, 2010, were objectively reasonable as a matter of law. *Brown*, 623 F.3d at 253. That is, the Court may decide whether a reasonable officer would or should have known that Alfonso's actions would deprive Plaintiff of a clearly established constitutional right. If the answer is no, the inquiry ends and the individual officer is entitled to qualified immunity. To make this determination, the Court must consider the "defendant's circumstances," which

---

[54] R. Doc. 49-5 at p. 37.

[55] R. Doc. 49 at pp. 10-11.

"include[] facts known to the defendant." *Thompson*, 245 F.3d at 457.

After examining Jail conditions and the facts Alfonso knew on August 14, 2010, the Court finds that Alfonso's conduct was objectively reasonable due to the following evidence, or lack of evidence, and as a result there is no need for the Court to determine whether Alfonso violated Plaintiff's clearly established constitutional right. First, there is no evidence that Alfonso was aware that Jail conditions were threatening inmate safety, but chose to ignore them. Prior to the August 14 altercation, Plaintiff had not put Alfonso on notice that the Wilsons were a threat to him. Furthermore, Plaintiff has provided no evidence the Wilsons had been involved in other fights, which also could have provided notice that the Wilsons needed to be monitored more closely. Indeed, Plaintiff has not come forward with evidence that *any* prior fights had ever taken place in the Jail, such that the Jail's staff would have been aware they needed to take extra precautions, especially when serving on weekend duty. Second, the evidence shows Alfonso conducted regular visual security checks. Third, Alfonso was not aware that the Simplex system was malfunctioning and his employer had not assigned to him the duty to inspect the Simplex system to ensure that it operated properly. Fourth, Alfonso did not see Plaintiff banging on the C-4 common room's windows or hear Plaintiff's shouts for help. Testimony from other deputies confirms that officers in the C Wing Control Booth cannot hear inmates in the tiers unless they "scream pretty loud[ly]."[56] Surveillance footage confirms that Plaintiff tried to gain Alfonso's attention for one minute before he went into his cell, and there is no evidence that Alfonso saw or heard Plaintiff during that time.[57] Finally, once Corporal

---

[56] R. Doc. 49-4 at p. 30.

[57] R. Doc. 50 at 5:23:13 p.m.

Lewis entered C Wing to conduct the "feed up" and reported to Alfonso that Plaintiff was hurt, Alfonso immediately summoned help.

The Court recognizes that Plaintiff seeks to persuade the Court that his "effort[s] to summon assistance were ignore[d] by defendant Alfonso," which, he asserts, raises a genuine issue of material fact as to whether Alfonso actually ignored him.[58] Yet, Plaintiff has not provided any evidence to indicate that a *genuine* issue of material facts exists such that a reasonable jury could conclude Alfonso actually heard or saw, and nevertheless ignored, Plaintiff's requests for help. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505 (1986) (stating that a genuine issue of material exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party"). Rather, Plaintiff states in his declaration that "[a]fter regaining consciousness, I attempted to notify St. Bernard Parish Jail personnel that I had been beaten and seriously injured. I banged on the glass and attempted to use the distress buzzer but my efforts were ignored."[59] Plaintiff's declaration does not set forth any facts on which Plaintiff bases his statement that Alfonso actually heard or saw him but chose to ignore him. Plaintiff testified at his deposition, when asked whether he could see Alfonso in the control booth at the time he attempted to attract Alfonso's attention, that he "could see the control booth very clearly but the windows are tinted."[60] Plaintiff continued that "[n]o one can ever see the deputy because the windows are tinted. [The] [o]nly time you see the deputy is when he enters the control booth or comes out of the control booth. Other than that, you cannot see him while he is

---

[58] R. Doc. 49-1 at p. 1.

[59] R. Doc. 49-2 at pp. 1-2.

[60] R. Doc. 49-8 at p. 32.

in there."[61] Plaintiff also testified at his deposition, and stated in his declaration, that he returned to his cell shortly after the altercation.[62] The surveillance footage supplied to the Court shows Plaintiff returned to his cell at 5:23 p.m., approximately one minute after he regained consciousness.[63] Thus, though Plaintiff claims that Alfonso ignored him, Plaintiff has testified that he could not see Alfonso at the time he attempted to contact him and the video shows Plaintiff did not spend more than a minute trying to contact Alfonso before returning to his cell. As a result, Plaintiff has come forward with no evidence, other than his self-serving declaration, that Alfonso knew of, and yet disregarded, his requests for help.

"[A] self-serving affidavit, without more evidence, will not defeat summary judgment." *Sanchez v. Dallas/Fort Worth Int'l Airport Bd.*, 438 Fed. App'x 343, 346-47 (5th Cir. 2011) (citing *DIRECTV, Inc. v. Budden*, 420 F.3d 521, 531 & n.49 (5th Cir. 2005)); see also *United States v. Lawrence*, 276 F.3d 193, 197 (5th Cir. 2001); *BMG Music v. Martinez*, 74 F.3d 87, 91 (5th Cir. 1996). Given that Plaintiff's deposition testimony directly undercuts his conclusory declaration that Alfonso consciously ignored his requests for help, and drawing all inferences in Plaintiff's favor as this Court is obligated to do on summary judgment, the Court nevertheless finds that Plaintiff has failed to establish a genuine issue of material fact exists.

Plaintiff bears the burden to come forward with evidence defeating Alfonso's right to qualified immunity by showing that a reasonable officer would have known that Alfonso's actions violated Plaintiff's clearly established constitutional right. Plaintiff has failed to

---

[61] R. Doc. 49-8 at pp. 32-33.

[62] R. Docs. 49-2 at p. 2 and 49-8 at p. 35.

[63] R. Doc. 50 at 5:23:13 p.m.

meet this burden. An officer who reasonably, but mistakenly, commits a constitutional violation is entitled to qualified immunity. *Collins*, 382 F.3d at 537. The Court finds that Alfonso's conduct on August 14, 2010, was objectively reasonable. A reasonable officer in Alfonso's position would not have known that his actions violated Plaintiff's clearly established right to be adequately supervised such that Plaintiff would not be subjected to inmate-inflicted violence in contravention of the Eighth Amendment. Alfonso is entitled to qualified immunity and, as to Alfonso, the Court therefore **GRANTS** the motion for summary judgment. Plaintiff's Section 1983 failure to protect and failure to respond claims against Alfonso are **DISMISSED WITH PREJUDICE**.

### B.    The Sheriff

The Sheriff also has moved for summary judgment that he is entitled to qualified immunity with respect to Plaintiff's failure to protect claim, his failure to respond claim and his failure to provide adequate medical care claim.[64] However, as Plaintiff underscores in his opposition memorandum, the Sheriff is being sued only in his official capacity. An action against the Sheriff in his official capacity is, in effect, an action against his office.[65] The Sheriff only may assert defenses that his office is entitled to assert. *Turner v. Houma Mun. Fire and Police Civil Serv. Bd.*, 229 F.3d 478, 483 (5th Cir. 2000) (citing *Hafer v. Melo*, 502 U.S. 21, 25, 112 S.Ct. 358 (1991) ("[T]he only immunities available to the defendant in an official-capacity action are those that the governmental entity possesses.")). Political subdivisions and municipalities are not entitled to defend a lawsuit on the basis

---

[64] R. Doc. 45-1 at p. 6.

[65] "Official capacity suits generally represent another way of pleading an action against an entity of which an officer is an agent." *Burge v. Parish of St. Tammany*, 187 F.3d 452, 466 (5th Cir. 1999).

of qualified immunity. *Leatherman v. Tarrannt Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 166, 113 S.Ct. 1160 (1993) ("[M]unicipalities do not enjoy immunity from suit – either absolute or qualified – under § 1983."). Thus, the Sheriff in his official capacity does not have qualified immunity.[66] Accordingly, as to the Sheriff, the Court **DENIES** the motion for summary judgment on qualified immunity.

The Court will address by separate order Defendants' arguments regarding Plaintiff's failure to protect claim asserted against the Sheriff in his official capacity, Plaintiff's failure to respond claim asserted against the Sheriff in his official capacity, Plaintiff's failure to provide adequate medical care asserted against the Sheriff in his official capacity, and whether the Court should exercise supplemental jurisdiction over Plaintiff's state law claims.

**IT IS SO ORDERED**.


New Orleans, Louisiana, this ⎯22nd⎯ day of January, 2013.


**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[66] The Sheriff relies on *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727 (1982) and *Johnson v. Johnson*, 385 F.3d 503 (5th Cir. 2004) in support of his argument that he is entitled to qualified immunity. These cases set forth the standard for an officer entitled to qualified immunity in his individual capacity; they do not stand for the proposition that an officer in his official capacity is entitled to qualified immunity.